Filed 8/5/26  S.R. v. B.N. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| S.R.,<br><br>        Appellant,<br><br>    v.<br><br>B.N.,<br><br>        Respondent. | H053306<br>(Santa Clara County<br> Super. Ct. No. 24CP000485) |

In this pending parentage action, S.R. appeals after the trial court issued mutual domestic violence restraining orders (DVROs) against him and B.N.[1]  The order issuing mutual DVROs also included a joint legal and physical custody order of the parties' minor child, with B.N. having supervised visitation with the child three days a week. S.R. contends the trial court erred by issuing mutual restraining orders and by ordering joint legal and physical custody of the child.  B.N. has not filed a respondent's brief. Consequently, we decide the appeal based on the record and the opening brief.  (Cal. Rules of Court, rule 8.220(a)(2).)

For the reasons explained below, we will affirm the trial court's order issuing mutual DVROs, and we dismiss as moot S.R.'s appeal from the court's order of joint legal and physical custody.

---

[1] Because this case involves proceedings under the Domestic Violence Prevention Act, we refer to the parties by their initials to protect the privacy interests of protected persons.  (Cal. Rules of Court, rule 8.90(b)(1), (11).)

# I. FACTUAL AND PROCEDURAL BACKGROUND

S.R. and B.N. had been in a relationship in which they lived together and had one son together. S.R. and B.N. also each separately had a child before the relationship.

Shortly after S.R. filed a parentage action against B.N., each party filed an application for a DVRO against the other. At the hearing on the applications, S.R. testified and called two witnesses. One of these witnesses testified that on one occasion he saw B.N. repeatedly strike S.R. while S.R. was driving, though the witness did not see any injuries to S.R. The second witness testified that she received a message from B.N. with information about S.R.'s medical condition that she considered "kind of random." S.R. testified about several incidents that led him to file the DVRO application, including that B.N. hit his daughter on top of her forehead, B.N. repeatedly allowed their child to be in contact with her son in violation of an earlier temporary order, B.N. was arrested regarding a text she sent him, and B.N. placed a "tracker" in their son's shoe. S.R. also testified regarding the message B.N. sent about his medical condition, stating that the condition was "very personal."

B.N. testified but did not call any other witnesses. She testified that S.R. "physically attacked" her "maybe eight or nine" times during their relationship, each time when she found indications of S.R.'s involvement with other women on his phone. She testified about one instance in which she looked at S.R.'s phone and found text messages from other women. During this incident, she testified, she took the phone and showed the messages to S.R., and S.R. responded by grabbing her by her arms, pushing her to the ground, placing her in a "choke lock," and kicking her, causing "multiple bruises everywhere." She also testified that she disclosed S.R.'s medical condition because learning of this condition caused her to believe S.R. was having sexual relations with another woman. B.N. further testified that she owned a handbag collection and S.R. sold her handbags without her permission. She denied hitting S.R.'s daughter. In response to questions from the court, B.N. testified that she did not have a "problem" with alcohol

and had completed a substance abuse program, but the program involved group meetings and she "mostly just listened."

The trial court granted both parties' DVRO applications. The court stated it found "some credibility issues" with both parties. The court stated it found the testimony by S.R.'s two witnesses credible, particularly concerning the message about S.R.'s medical condition because B.N. conceded she sent the message. The court found that this message amounted to domestic abuse because B.N. sent the message "with the intent to disturb [S.R.'s] peace and to exact some sort of retaliatory vengeance, I guess, for his acts of being unfaithful." The court also found S.R. credible when he testified about B.N. hitting his daughter, noting B.N.'s "mocking tone" when describing what S.R.'s daughter allegedly said in the incident and further observing that B.N.'s "whole attitude towards that interaction was a problem." The court found credible B.N.'s allegation of abuse or domestic violence when she confronted S.R. with messages found on his phone, because while S.R. was "entitled to use some amount of physical force to obtain his phone back," the "act of pushing down and the kicking is not a justifiable response." The court also noted B.N.'s testimony that S.R. had physically attacked her eight to nine times in total during their relationship, stating that these acts constituted domestic abuse.

The court stated it assessed this case "with particular attention" to Family Code section 6305, subdivision (b),[2] Penal Code section 836, subdivision (c), and *Salmon v. Salmon* (2022) 85 Cal.App.5th 1047 (*Salmon*).[3] The court therefore issued DVROs against both parties, concluding that "both parties have been dominant aggressors within the meaning of the law . . . ."

---

[2] Unspecified statutory references are to the Family Code.
[3] The transcript states that the trial court considered Penal Code section 835, but the references to section 6305, subdivision (b) and the *Salmon* case indicate the trial court intended to state that it considered Penal Code section 836.

The trial court also ordered joint legal and physical custody of the parties' child, continuing a previously-outlined parenting plan that involved B.N. having supervised visitation with the child three days a week for three hours at a time. In issuing this order, the trial court made a finding under section 3044 that both parties perpetrated domestic violence against each other.

S.R. timely appealed.

## II. DISCUSSION

S.R. challenges both the trial court's issuance of a DVRO against him and the trial court's order of joint legal and physical custody of the parties' child. Regarding the DVRO, he argues the court failed to "consider and determine a 'dominant aggressor' in the context of the entire interactions between the parties." He then argues that the court abused its discretion in awarding joint legal and joint physical custody because the court's ruling was not consistent with an analysis focused on the best interest of the child and the court's ruling "just does not make sense" based on the parenting plan the court approved. We find no abuse of discretion with respect to the DVRO, and we dismiss as moot S.R.'s appeal from the order of joint legal and physical custody of the parties' child.

### A. *Domestic Violence Restraining Orders*

#### 1. *Legal principles and standards of review*

A court may issue a restraining order under the Domestic Violence Prevention Act (§ 6200 et seq.) "to prevent domestic violence or abuse if the party seeking the order 'shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse.' [Citations.]" (*Melissa G. v. Raymond M.* (2018) 27 Cal.App.5th 360, 367.) "Abuse" includes intentionally or recklessly causing or attempting to cause bodily injury, or placing a person in reasonable apprehension of imminent serious bodily injury to that person or to another. (§ 6203, subd. (a)(1), (3).) "Abuse" also includes "disturbing the peace of the other party," which refers to conduct that "destroys the mental or emotional calm of the other party." (§§ 6203, subd. (a)(4), 6320, subd. (c).) "Abuse is not limited

4

to the actual infliction of physical injury or assault." (§ 6203, subd. (b).) "Domestic violence" is abuse perpetrated against listed persons, including one with whom the respondent is having or has had a dating relationship. (§ 6211, subd. (c).)

Under section 6305, trial courts must make additional findings before issuing mutual DVROs to "ensure that a mutual order is the product of the careful evaluation of a thorough record and not simply the result of the moving party yielding to the other party's importunities or the court deciding that a mutual order is an expedient response to joint claims of abuse." (*Conness v. Satram* (2004) 122 Cal.App.4th 197, 204, fn. omitted.) The trial court must "make[] detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense." (§ 6305, subd. (a)(2).) In making this determination, "the court shall consider the provisions concerning dominant aggressors set forth in" Penal Code section 836, subdivision (c)(3). (§ 6305, subd. (b).) That Penal Code provision provides in relevant part: "The dominant aggressor is the person determined to be the most significant, rather than the first, aggressor. In identifying the dominant aggressor, an officer shall consider (A) the intent of the law to protect victims of domestic violence from continuing abuse, (B) the threats creating fear of physical injury, (C) the history of domestic violence between the persons involved, and (D) whether either person involved acted in self-defense." (Pen. Code, § 836, subd. (c)(3).)

We review for abuse of discretion the trial court's order granting a DVRO and, to the extent we are called upon to review the court's factual findings, we do so for substantial evidence. (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12.) "In reviewing the evidence, we examine the entire record to determine whether there is any substantial evidence—contradicted or uncontradicted—to support the trial court's findings." (*Ibid.*) "We must accept as true all evidence supporting the trial court's findings, resolving every conflict in favor of the judgment. [Citation.] We do not determine credibility or reweigh

the evidence.  [Citation.]  If substantial evidence supports the judgment, reversal is not warranted even if facts exist that would support a contrary finding.  [Citation.]"  (*Ibid.*)

## 2. *Analysis*

The trial court did not abuse its discretion in issuing mutual DVROs.  Substantial evidence supports the trial court's finding that S.R. engaged in abuse or domestic violence toward B.N.  S.R. does not contend otherwise.

Instead, S.R. argues the trial court did not properly conclude under section 6305 that both parties were "dominant aggressors."  He contends that the court "did not compare the conduct of the parties to determine which of them was the dominant aggressor under the totality of the circumstances in their relationship," but instead "evaluated each allegation separately, made independent findings that each party had committed domestic violence and determined that each was a 'primary aggressor' and issued a mutual restraining order as a result."  The record does not demonstrate that the trial court abused its discretion in this regard.

The trial court complied with section 6305's requirement that it not issue mutual DVROs without making the required factual findings that both parties acted as a primary aggressor and neither party acted primarily in self-defense.  (*Id.*, subd. (a)(2).)  The trial court analyzed the allegations of abuse and domestic violence made by both S.R. and B.N., and it made credibility determinations in finding that these allegations were supported by substantial evidence.  The trial court also determined that these instances were not justified in self-defense, including finding S.R.'s violence toward B.N. was "not a justifiable response."  Having analyzed each instance of alleged domestic violence or abuse, the trial court concluded that both parties "have been dominant aggressors within the meaning of the law," and it issued mutual DVROs accordingly.

S.R. relies on *Salmon*, *supra*, 85 Cal.App.5th 1047, but *Salmon* does not support his argument that the trial court improperly performed the section 6305 analysis.  In *Salmon*, the trial court issued a DVRO against the husband but denied the husband's

6

petition for a DVRO against the wife. (*Salmon*, *supra*, at p. 1052.) The Court of Appeal affirmed, concluding that section 6305 "expressly permits the trial court to weigh the acts of the parties to determine if one should be considered the dominant aggressor before issuing a mutual restraining order . . . ." (*Salmon*, *supra*, at p. 1052.) The reviewing court held that "the plain words of the statute clearly contemplate the trial court will: weigh the acts of the parties; determine whether one of the parties should be considered the primary or dominant aggressor; and issue a mutual restraining order only in the event neither party can fairly be characterized as the primary aggressor." (*Id.* at p. 1059.) The Court of Appeal then held that the trial court was not required to make such detailed factual findings in declining to issue a mutual restraining order. (*Id.* at p. 1060.)

Here, the trial court complied with section 6305's requirements, including weighing the acts of the parties and determining that both parties were dominant aggressors using the criteria outlined in Penal Code section 836. *Salmon* does not require any findings beyond what section 6305 mandates. Thus, the trial court did not abuse its discretion in issuing mutual DVROs.

### B. *Custody Order*

S.R. alleges the court failed to compare the conduct of the parties in ordering joint legal and physical custody. He cites evidence that B.N. sewed a tracker into the child's shoe, abused alcohol, and committed domestic abuse against S.R.'s daughter.

At the DVRO hearing, both B.N.'s counsel and the trial court referred to an earlier order by an "all-purpose judge" that affected custody, and the trial court noted that the issue that led to that order was not raised in the DVRO hearing and "remains somewhat unresolved." The record does not reveal the precise nature of that earlier order. The trial court at the DVRO hearing directed S.R.'s counsel to restrict argument to "what you think the timeshare ought to be," and at the conclusion of the hearing, the trial court recognized: "There are all kinds of issues that need to be resolved outside . . . of this domestic violence restraining order context."

7

Because the record indicates that the trial court believed further custody proceedings were appropriate, we requested supplemental briefing addressing whether the portion of the appeal challenging the DVRO custody order has been rendered moot by any subsequent custody order issued in this matter. S.R. responded by conceding that his appeal of the DVRO custody order is now moot. He stated that "[t]he issue of custody in this matter has continued to be litigated in the trial court," and he attached an order issued several months after the DVRO hearing in which the court awarded sole legal and physical custody of the parties' child to S.R.

We accept S.R.'s concession that his appeal from the trial court's custody order at the DVRO hearing is moot. That custody order is no longer in effect, and S.R. has since been granted sole legal and physical custody of the parties' child. S.R.'s challenge is therefore moot because "events transpire[d] which prevent the appellate court from granting any effectual relief." (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 566.)

### III. DISPOSITION

The mutual domestic violence restraining orders against appellant S.R. and respondent B.N. are affirmed. Appellant S.R.'s appeal from the temporary custody and visitation order issued at the domestic violence restraining order hearing is dismissed. As respondent made no appearance in this appeal, there are no costs to award.

_____
Greenwood, P. J.

WE CONCUR:


_____
Danner, J.




_____
Bromberg, J.




H053306 S.R. v. B.N.